The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Good morning. Thank you to counsel for joining us this morning for this argument session. The court has four cases set for our argument. Madam Clerk, would you please call the first case? Case number 20-3730, Minnesota. Geraldine Tyler et al. v. State of Minnesota et al. Very well. Ms. Martin, we'll hear from you first. Good morning, Your Honors. Christina Martin for Appellant Geraldine Tyler. May it please the court. Hennepin County seized Geraldine Tyler's former home, her condo. That condo was worth substantially more than Ms. Tyler owed to the county. The county sold it for $40,000. Her tax debt, including all penalties, interest, and costs, was $15,000. The county did not pay Tyler just compensation when it took her condo and it did not refund the $25,000 in extra proceeds that it received when it sold it later. By taking more than it was owed and failing to abide by the traditional property rights protection for debtors, the county violated the U.S. and Minnesota constitutions. The district court erred by dismissing her claims. Tyler's federal and Minnesota takings claims have ample support in the common law, Minnesota case law, and in modern takings law. The U.S. and Minnesota constitutions require that when government takes private property for a public use, it must pay just compensation. What that means here is the county took Ms. Tyler's private property for the public purpose of tax collection. Rather than pay her for the extra value saved up in that property, the county took it, sold it, and kept a windfall at her expense. The traditional rule would require, in the traditional property rights that Ms. Tyler is enforcing today, requires that the county pay for the extra value that it took from her. Traditionally, if a property owner owed a debt to the government, the government can take that extra profit back to the former owner. That traditional rule enjoys roots that trace back at least to Magna Carta. Blackstone, who the Supreme Court often cites as the authority for defining the common law, explained that though government could take private property to collect a debt, it was obliged to sell and refund the overplus. This principle was also recognized at the founding of this country, it was recognized at the founding of Minnesota, and at the adoption of the 14th Amendment, which, of course, incorporates the Takings Clause against the states. We know this, for instance, because of Thomas Cooley, who wrote his Treatise on Taxation at around the same time as the adoption of the 14th Amendment. He said that he was unaware of any state that failed to provide some protection for the debtor's property. He said that states either sold the property to the highest bidder and refunded the smallest piece so that there was no surplus. And that's indeed what most states still do today. The vast majority of states still protect the surplus value saved up in property, and Minnesota normally also does the same in the context of mortgage foreclosures and executions on judgments. The property is sold, and the debtor's equity interest saved up is protected by paying the debts and then refunding that surplus value back to the former owner. The state Supreme Courts of Michigan, Vermont, New Hampshire, Mississippi, Virginia, and some federal district courts have held that when government takes property that's worth more than it's owed and fails to pay that surplus value, that is a taking. Others have come close and have noted that that right to the surplus is inherent, and Minnesota is one of those states. In Farnham, the Minnesota Supreme Court expressly recognized that a debtor has a right to the surplus, regardless of whether Minnesota statutes acknowledge that right. The court said, quote, the right to the surplus exists independently of such statutory provision. Counsel, could the Minnesota legislature abrogate that common law right, in your view? The legislature could abrogate, for instance, the right of the timing for the right of redemption, or the timing of when they take title. What they can't do is take private property without just compensation. When you say the timing, how do we factor in the sort of this long redemption period in Minnesota law, where there's been several opportunities in several years for the property owner to get that surplus out themselves? Sure, so the redemption period is an important procedural protection. The Minnesota legislature could shorten that if they wanted to, but what they can't do is take more than they're owed when they do go to collect. That is something that's unique in Minnesota, as compared to what was practiced historically in the United States and Minnesota, and in the vast majority of states. Again, it's only this context that we know of in Minnesota that actually allows the debt collector to take everything instead of just what it's owed. In Farnham, the Minnesota Supreme Court noted that- of the county and the county officials were illegal or unconstitutional, or is it a claim that the statute and the statutory scheme is unconstitutional? The county's action is unconstitutional. As I recall, originally, the state was actually involved in the lawsuit, and they were dismissed from it before it was reported. Why was the state dismissed? Because it's ultimately the counties that are responsible for the taking. So why- They have a large amount of discretion in how they manage their- But this is not a claim- this is not a case where there's a claim that the county did not follow the statutory scheme, is it? No, the county has followed the provisions in the statute, but what they failed to follow is the requirements of Farnham and Burnquist and the common law property right here, which supersede any legislative enactment. In Farnham, the Minnesota Supreme Court said that the purpose of seizing property to collect delinquent taxes was, quote, to collect the revenue, and when that's accomplished and a sale made, the proceeds stand in the place of the property as respects the landowner's rights. And so that means that the government was- or the tax collector could only take so much as was And that's exactly what we're proposing here, is that the government certainly has a right to take the property and to sell it, but what it does not have a right to do is then to fail to refund the extra profits, or alternatively, it could have paid just compensation at the time the county claims the taking occurred, which would have been back when it- according to the county, the taking would have occurred back when it took title and extinguished Ms. Tyler's interest. When does Tyler claim that the taking occurred in the complaint in this case? I understood Judge Schultz to be focusing on the later action. So- Wasn't that your claim? The taking ultimately- what we argue is essentially that the taking is either because the government failed to pay later on when it sold the property, and that's because of Farnham. Farnham says that regardless of what state law says, a property owner has a right, an independent right, to the surplus proceeds from the sale of the property. And so I think that's when the taking occurred, when the government failed to refund what does not rightfully belong to it. Certainly it has that right to try to take property and sell it and collect it, that is- but what it doesn't have a right to do is fail to refund what doesn't rightfully belong to it. But- But- But the alternative, as we've repeatedly said, the county could alternatively have paid just compensation when it seized title to the property. If the county- if we were wrong about our reading of Farnham, that would be an alternative way to recognize that a taking occurred. Well, if I understand the essence of Judge Schultz's ruling, it's on page 23 and 24 of his decision where the district court says, the U.S. Supreme Court has unambiguously declined to recognize a former property owner's fundamental interest in the surplus by virtue of her prior ownership of the forfeited property. Do you disagree with that? Yes. Why don't you address that point, please? Sure. So he's relying on Nelson versus City of New York for that claim. But in Nelson, the court said that what defeated the takings claim was not the failure to redeem, but rather the absence of timely action to recover any surplus from a judicial sale. And I'm taking that language straight from the Supreme Court decision. The reason why there's so much discussion in that opinion about the right of redemption is because that case was raised as a due process claim. The takings argument was not raised until the reply brief on the merits before the United States Supreme Court. So that the court was rather dismissive of it, tells us nothing about the merits of a case like this one where there is no opportunity to claim the money. Here, there was no opportunity for Ms. Tyler to go ask the county for it. And in contrast, in New York, the former owner could have just shown up. They didn't have to pay the debt. They could have just asked for the money. So they're two very different situations. And I think it's also really important to note that there are some differences now under Nick. Nelson essentially recognized an opportunity for the right to go claim the surplus. And under Nick, a state court opportunity to claim the surplus is actually not the same thing as the payment of money. So there is some question about whether it's good law at all anymore. But I think ultimately, they're two very different situations. Because in Nelson, you could have claimed the money. Here, Ms. Tyler did not have that opportunity. I would like to reserve the remainder of my time for rebuttal, if that's okay. Yes, you may. Thank you for your argument. Yes, Ms. Holshue, we'll hear from you. Good morning, your honors. Rebecca Holshue, Assistant Hennepin County Attorney on behalf of Hennepin County and Hennepin County Auditor Treasurer Mark Chapin. May it please the court, Minnesota's property tax forfeiture law is not unconstitutional and it is not unfair. Minnesota's law is constitutional for three reasons. First, Minnesota constitutionally acquired title to appellant's condo. The U.S. Supreme Court has recognized that government can enforce the payment of taxes by taking title through forfeiture. Second, in Minnesota, the state takes absolute title following the expiration of the redemption period. No surplus can arise under this theory because the entire property forfeits and there is no remaining property interest to take. All interests are extinguished, including those of any creditors. Thus, the retention of any so-called surplus simply cannot be a taking. Minnesota additionally creates no right following the extinguishment of these interests. Third, Minnesota's law is constitutional because there was an opportunity to protect the interest prior to forfeiture. Appellant wants the taxpayers to buy her property at the moment of forfeiture and send her a check in the mail. Counsel, do you think this case is about the constitutionality of the Minnesota statute? I do, your honor. I am here defending the constitutionality of Minnesota's tax forfeiture statutes. I will clarify that the county has no discretion in the enforcement of these statutes. Shouldn't the state be involved in the case if the constitutionality of one of its laws is under attack? I can't speak to the state's participation, your honor. I am here to defend Hennepin County's adherence to the state statute as it is. What was your third point there that you say the plaintiff here had an opportunity to protect her interest prior to what? What was your thought? Absolutely, thank you. The appellant had ample opportunity to protect her interest prior to final forfeiture and that is all that is required and where in the forfeiture process that opportunity exists is inconsequential. Next, Minnesota's law is not unfair. Appellant had many opportunities to protect her interest between 2010 when she left her condo and 2016 when the county eventually resold it. Appellant doesn't allege she couldn't pay the taxes, she doesn't allege she tried to pay the taxes, and she doesn't allege she didn't know her property would forfeit. Instead, appellant brought this class action for compensation after she had given up the property, but appellant's preferred policy choice provides no greater opportunity to protect her property interest than the many years she already had to sell the property on her own. How to best balance private and public interests through tax collection is a question for the legislature and Jen Schilch's decision should be affirmed. I heard counsel today maybe suggesting that the taking occurred when the state acquired title or when the county acquired title. Has that been pleaded? Is that part of this case or has this case proceeded only on the theory that the taking occurred at the end of the line when the sale happened? It's my understanding, that the appellant is alleging that the taking happens at the moment of final forfeiture when the entire asset is seized and the government retains any quote-unquote surplus that may exist at that moment in time. That moment in time happens under Minnesota law at the conclusion of the redemption period which ends after a series of notices have been made required by statute. Your honors, I'd like to note that tax forfeiture is very different than the other collection mechanisms that appellant alludes to in her argument. This is not mortgage foreclosure, this is not foreclosure of a judgment, this is not seizing personal property to pay for a debt in which there's an opportunity to only seize so much of the property as is necessary to satisfy the debt. Historically, tax forfeiture has been a very unique and distinct collection mechanism of last resort for local government to collect property taxes when every other effort to has failed. I'd also like to address Farnham. Appellant states that Farnham stands for the existence of a common law right in Minnesota to the quote-unquote surplus that may exist in a property upon its final forfeiture. Farnham's holding actually related to whether the certificate of sale was proper. But in dicta, Farnham did say that under the 1881 act at issue there was an opportunity to claim the surplus from the sale. Farnham was interpreting a special law that created a clearing up sale of sorts for various properties at different stages in the tax forfeiture process. At the time in Minnesota there was an opportunity to claim a surplus following a tax judgment sale. The Supreme Court in Farnham was saying like that ordinary rule in this special sale where we're disposing of lots of properties at various places procedurally, we're going to interpret that law, that statute, as also allowing a claim to those excess sale proceeds. So like Nelson found that Lawton was interpreting a statute, Farnham was interpreting a special statute, the 1881 act. I'll also address Nelson. Nelson is dispositive of this case. New York's tax forfeiture law is a judgment action. There is a judicial process in which the state obtains a judgment against the property. There is an opportunity to answer and there's a redemption period. There's many, many opportunities for someone to protect their property interest. In Nelson, the United States Supreme Court said that so long as there is an opportunity for an owner to protect their interest, the law is constitutional. That is the central takeaway from Nelson and that should dispose of this case. Counsel, in Nelson though it was an opportunity after the surplus was created by the sale though, right? So that was the judgment sale, I believe. So in Nelson there is a judgment sale as there is in Minnesota. It's a two-step process. So the state obtains a judgment and then historically there has been a public judgment sale. But now by operation of law, those properties are sold to the state of Minnesota and that's what commences the redemption period. And only when the redemption period expires does the interest in the last property stick get extinguished. So the state holds title following that sale subject to the after all the statutory notices. That's when the final interest is extinguished and state law says Minnesota holds absolute title. So in Nelson, the U.S. Supreme Court was interpreting a New York law that provided the same judicial process in the form of a judgment action where a judgment was obtained against the property for the delinquent tax. In the case of Nelson, it was a water bill and the difference between New York state law and Minnesota's was that in the course of answering, an owner had the opportunity to assert their interest in the property and the state court had the opportunity to order a sale. That's how Nelson described the New York law. But that specific opportunity is not required. All that's required for this law to be constitutional is for it to provide an adequate opportunity for those with an interest in the property to protect their interest no matter the exact form that opportunity takes or where in this very long process it arises. So under Nelson, Minnesota's law is constitutional. Your Honors, to provide appellant the relief she seeks, this court would have to do three things. First, the court would have to find a common law property interest that survives final forfeiture. Second, this court would have to find that interest was not abrogated by the Minnesota legislature in passing 282.08. That is the statute that directs counties at the distribute proceeds of properties that are sold following final forfeiture. And third, this court would have to overrule Nelson's determination that a forfeiture is constitutional where the owner has a sufficient opportunity to protect her interest. This court should do none of those things and instead affirm Judge Schultz's dismissal of appellant's claims. Does that complete your argument? Yes, thank you, Your Honor. Very well, thank you for your argument. Ms. Martin, we'll hear from you in rebuttal. Thank you, Your Honor. So I want to respond to a few things. First of all, the New York statute again gave the opportunity for a judicial sale where the property owner could have received the surplus. And also, we're not just asserting here a federal takings claim. Ms. Tyler has asserted a state takings claim. And I think you asked again about how this has been pleaded. The complaint is actually on the broad side about what causes the taking as is often the case. This was dismissed on a motion to dismiss. This did not go through a motion for summary on. What is your theory? Are you saying the taking occurred when the title was acquired by the state or when the state sold the condo and failed to turn over the surplus? Well, we're suggesting that a taking occurred. It could have happened at either time point. I know, but it'd be helpful if you could specify when you think it happened. If you don't have a position, I'll take that as an answer if that's your answer, but I'm trying to follow the analysis. Sure. I think it happened when the county failed to pay the surplus back to Ms. Tyler because that's a traditional property right that carries forward regardless of who holds the title. But if I were wrong about Ms. Tyler having a right that carries forward, then a taking would have simply occurred a little bit and there was not just compensation paid for the value that exceeded Ms. Tyler's debt. So, here you have property. It was physically taken. Her title was taken. The property interest was extinguished. What we don't have is the payment of just compensation or we have a payment of just compensation maybe of $15,000. That's vastly less than what Ms. Tyler owed. So, whether the taking happened when I think it happened or whether it happened when the county suggests it happened, when it extinguished Ms. Tyler's interest, a taking occurred either way. And you don't have to decide that at this stage if you don't want to. You could remand this case back to the district court and let the district court, you know, after discovery figure out when the taking happened and then you could review it on appeal. Does your fallback position that the taking took place when the title transferred to the state, correct? Is that your fallback? Well, after that, there was a redemption period and there was time for her to to get the property or get her surplus out of the property. Does that make a difference, at least in terms of your reading of Nelson, that after that taking there was an opportunity as opposed to after the surplus was after the sale and there was a surplus that there's no opportunity for her? Is that a distinction you're trying to make? No, because the first sale, as the county calls it, when it's bid into the state, it's not a real sale. It's essentially administrative. It's like an administrative transfer of how they're going to process the property. Later on, when that right to redeem expires is when the county takes title and extinguishes the former owner's right to possession. But there's still a one year, is there not? So when you're talking about the absolute title in the state and then there's a one-year opportunity for redemption, you're saying that that's not a sufficient process under Nelson? No, what I'm saying is the title is totally extinguished and then there is an opportunity to redeem the property. That's different than the right to redeem. So the taking would have occurred a little bit sooner. It would have occurred when the title was extinguished or, again, that's the fallback position. I think more properly, the taking would be viewed as when the county failed to refund those surplus proceeds. I would also just- So just quickly, if I could follow up. So you're saying that there's a difference between this than the right to redeem. So you're making that distinction? Right. Those are two very different- Okay, thank you. Yes. You're dealing with a 92-year-old lady who has limited resources. So the opportunity to save your property is a very different right than the right to be paid for what the government's taken from you. We would just ask that this court reverse and remand on all of- Ms. Tyler would like the opportunity to pursue all of her claims, which include federal and state constitutional claims and statutory claims. All right. Well, your time has expired and those other claims weren't argued in the first sessions or the first segments. I don't think it would be appropriate to hear rebuttal on them, but we have your briefs and we appreciate the submission. Thank you, Your Honor. Thank you to both counsel for your arguments. The case is submitted. The court will file a decision.